UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.

DR. ARIA OMAR SABIT,

          Defendant.
_____/

CRIM. CASE NO. 14-20779
CRIM. CASE NO. 15-20311

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

**PARTIAL ORDER OF RESTITUTION: $1,568,622 ON FALSE AND FRAUDULENT MEDICARE CLAIMS RELATED TO DEFENDANT'S GUILTY PLEA TO C.D.CA SUPERSEDING INFORMATION: 15-CR-20311**

The Superseding Information filed in the Central District of California on May 14, 2015 and transferred to the Eastern District of Michigan charges Defendant Aria Sabit and co-conspirators with a single count of Conspiracy to Commit Health Care Fraud, 18 U.S.C. §1349, and Criminal Forfeiture Provisions contained in §§981(a)(1)(c), 982(a)(7) and 28 U.S.C. §2461(1) involving medical procedures conducted in hospitals located in the Central District of California and the Eastern District of Michigan from February 2010, and continuing through August 2012.

The Introductory Allegations focus on his involvement with Apex Medical Technologies, LLC (APEX), and his violation of Title 42 U.S. Code §1320a-7b (the Anti-Kickback Statute): Sabit was an enrolled Medicare provider.

1

The California Information "Manner and Means of the Conspiracy" stated that Sabit's involvement in the kickback scheme involving Apex implant devices caused Sabit to

> 1. refer some of his patients in C.D.CA and E.D.MI for spinal surgery who did not medically need surgery, and refer patients for more complex surgeries than were medically necessary to treat the patients, and
>
> 2. at times, based on financial incentives provided to him by Apex, over-instrument his patients by using more Apex spinal implant devices in surgery than were medically necessary to treat his patients, causing serious bodily injury to at least some of his patients.

Finally, Paragraph 37 the Superseding Information specified that the conduct of Sabit and his co-conspirators caused the submission of $11,243,118 false and fraudulent claims to Medicare, resulting in Medicare paying approximately $1,568,622 on those false and fraudulent claims.

At Sabit's Plea hearing on November 16, 2015 (Dkt. #94), Defendant Sabit pled guilty to the California Superseding Information involving the Apex Spinal Implant devices, affirming the following:

> Court: All the surgeries that you performed using Apex spinal implant devices were predicated on illegal kickbacks and false statements which made all those claims false and fraudulent; is that correct?
>
> Sabit: Yes.

Plea Hearing TR. Dkt. # 94, P.21.

| | |
|---|---|
| Court: | Were they also predicated on false statements that were made to the Medicare program that you were going to be compliant with all Medicare rules and regulations including compliance with the anti-kickback statute? |
| Sabit: | Yes. |

Plea Hearing TR. Dkt #94, P.24.

Based on this California Superseding Information, and Defendant Sabit's Plea of guilty to that conspiracy court, the Court concludes that the restitution amount applicable to the payments for the false California Medicare submissions is the amount paid, to wit, $1,568,622. In addition, to the extent that Sabit's conduct in the aforementioned cases also caused injuries to individual victim-patients in Cr. #15-20311, the Court will deal with those additional restitution claims at the Court's hearing on August 14-15, 2018.

Further, the August 14-15, 2018 hearing will deal with restitution claims of all victims related to the Michigan First Superseding Information, charging Health Care fraud, 18 U.S.C. §1347, and Unlawful Distribution of a Controlled Substance, 21 U.S.C. 841(a)(1), and forfeiture allegations: Cr. #14-20779.

LEGAL DISCUSSION

In *United States v. Harold Jones*, 641 F.3d 706, 714 (6th Cir. 2011), a case involving mail fraud and health care fraud convictions, the Sixth Circuit noted:

> Jones's healthcare fraud and mail fraud convictions contain as elements schemes to defraud. The district court may therefore, order restitution for any loss, suffered by a victim of Jones's scheme. . . . [I]n the context of a conviction following a plea agreement . . . the scope of the scheme is

3

defined by "the plea agreement, the plea colloquy, and other statements made by the parties. . . ."

The Sixth Circuit noted that Title 18 U.S.C. §3663A(a)(2) defines victim, "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy or pattern."

In *United States v. Boggs*, 2018 WL 2474066 (6th Cir. 2018), the Sixth Circuit held that under the Mandatory Victims Restitution Act (MVRA):

> "where an offense 'involves as an element a scheme,' restitution should be ordered for 'any person directly harmed by the defendant's criminal conduct in the course of the scheme.' 18 U.S.C. §3663(a)(2). Mail fraud 'involves as an element a scheme,' . . . . Accordingly, when we have applied the MVRA in the context of mail fraud conviction, we have read this statutory definition of 'victim' to allow for restitution for the loss attributable to all the victims of a defendant's scheme to defraud, <u>even when the defendant was not indicted or convicted of fraud with respect to each victim</u>.' *United States v. Jones*, 641 F.3d 706, 714 (6th Cir. 2011) (emphasis added).

The *Boggs* Opinion added:

> In *United States v. Winans*, to take one notable example, we determined that a restitution order for 612 victims of wire fraud was justified under the MVRA even though the defendant pleaded guilty to one count involving just two victims. 748 F.3d 268, 272-73 (6th Cir. 2014). In another case, *United States v. Churn*, we held that a defendant convicted on seven counts of bank fraud could be ordered to pay a restitution amount more than double "the amount of harm linking to his convicted counts." 800 F.3d 768, 781-82 (6th Cir. 2015). These cases offer strong support for the district court's restitution award here.

Continuing, the Sixth Circuit did note two critical limitations to this opinion:

> First, a district court can award restitution greater than the losses in charged counts "only when the loss is attributable to the precise scheme that was an element of the defendant's convicted offense." *Jones*, 641 F.3d at 714. And second, "the scope of the scheme is defined by the indictment for purposes of restitution." *Id*.

In concluding, the Court noted:

> But the district court's restitution calculation here violated neither of those tenets. The 21 additional contracts were part of the "precise scheme" that undergirded the four charged mail-fraud counts. The additional contracts were from the same time period as the contracts involved in the charged counts and involved the same types of nonconformities. Moreover, the superseding indictment made clear that the scope of the scheme stretched beyond the charged contracts.

In the instant case, the loss is attributable to the precise scheme set forth in the California Information.

Accordingly, the Court Orders that Defendant Sabit pay restitution to the Government of the United States in the amount of $1,568,622 on his false and fraudulent Medicare claims scheme set forth in the C.D.CA Information charging Conspiracy to Commit Health Care Fraud and Forfeiture, that was transferred to this Court: Cr. #15-020311.

SO ORDERED.

s/Paul D. Borman<br>
PAUL D. BORMAN<br>
UNITED STATES DISTRICT JUDGE

Dated: July 25, 2018

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 25, 2018.

                                                s/Deborah Tofil
                                                Case Manager